UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MARIA MCGOWAN, ) | |
| ) | |
| Plaintiff, ) | Case: 2:23-cv-00245 |
| ) | |
| v. ) | |
| ) | |
| HOIST MATERIAL HANDLING, INC. ) | |
| ) | Jury Trial Demanded |
| Defendant. ) | |
| ) | |

## COMPLAINT

Plaintiff, Maria McGowan ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against Hoist Material Handling, Inc. ("Defendant"), and in support states as follows:

### NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII") seeking redress for Defendant's race-based discrimination, race-based harassment, and retaliation under §1981 and Title VII.

2. This lawsuit also arises under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101, *et seq*. ("ADA") seeking redress for Defendant's

3. This lawsuit further arises under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*. ("FMLA") seeking redress for Defendant's

### JURISDICTION AND VENUE

4. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.

5. Venue of this action properly lies in the Northern District of Indiana, Hammond Division, pursuant to 28 U.S.C. §1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

## ADMINISTRATIVE PREREQUISITES

6. All conditions precedent have been fulfilled or been complied with.

7. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Indiana Civil Rights Commission (attached hereto as Exhibit "A").

8. Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B").

9. This Complaint has been filed within ninety (90) days of Plaintiff's receipt of the EEOC's Dismissal and Notice of Right to Sue.

## THE PARTIES

10. At all times material to the allegations of this Complaint, Plaintiff, Maria McGowan resided in Cook County, Illinois and was employed in Lake County, Indiana.

11. At all times material to the allegations in this Complaint, Defendant, Hoist Material Handling, Inc. was a corporation doing business in and for Lake County, Indiana, whose address is 4407 Railroad Avenue, East Chicago, IN 46312.

12. Plaintiff was employed by Defendant as an "employee" within the meaning of 42 U.S.C §2000e(f).

13. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by Title VII, and has been engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. §2000e(b).

14. At all times material to this Complaint, Plaintiff was an "eligible employee" as

defined by the FMLA, 29 U.S.C. §2611(2)(A).

15. At all times material, Defendant was an "employer" as defined by 29 U.S.C.§ 2611(4).

16. At all times material, Plaintiff was employed by Defendant as an "employee" within the meaning of ADA, 42 U.S.C. § 12111(4).

17. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by ADA, and has been engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111(5)(A).

## BACKGROUND FACTS

18. Plaintiff was hired by Defendant as a material handler on or around January 10, 2018 until her unlawful constructive termination on or around November 1, 2021.

19. As a material handler, Plaintiff's duties included, but were not limited to, the following:

- Coordinate and expedite the flow of materials;
- Assemble parts according to production protocols;
- Compile and maintain manual or computerized records; and
- Confer with other departments to resolve issues and requests for services.

20. Plaintiff is disabled as a result of her asthma.

21. Plaintiff's disability causes her to have difficulty breathing, chest tightness, difficulty walking long distances and up stairs, and causes flare-ups of wheezing, coughing, and susceptibility to respiratory illnesses.

22. As a result of the above symptoms, Plaintiff's asthma substantially impacts her major life activities.

23. Regardless of Plaintiff's asthma, she was able to perform the essential functions of her job with or without accommodation.

3

24. In fact, Plaintiff received satisfactory feedback from Defendant about her work performance, such as being awarded Employee of the Month and receiving an Above & Beyond Award.

25. Plaintiff is African American and is a member of a protected class because of her race.

26. Since at least April 2020 through November 1, 2021, Defendant has subjected Plaintiff to different terms and conditions of employment than others not within her protected class and has been subjected to a hostile work environment on the basis of race, violating Title VII and §1981.

27. In or around April 2020, Plaintiff learned that Caucasian and other non-African American employees who held her same job title were being granted additional commissions on top of their salaries that she was not receiving.

28. That same year, one of Plaintiff's coworkers, Shawn Moore (non-African American), began to discriminate against Plaintiff on the basis of her race.

29. When Plaintiff would work shifts with Mr. Moore, he would ignore Plaintiff, refuse to answer her questions regarding work-related tasks, refuse to work on projects with her, and would intentionally withhold crucial information so that tasks would not be completed according to protocol.

30. Mr. Moore's conduct towards Plaintiff was because of Plaintiff's race and served to undermine and alienate Plaintiff on account of her being African American.

31. Another of Defendant's employees, and Plaintiff's supervisor, Diego Avilla (non-African American, non-disabled) subjected Plaintiff to race-based discrimination and harassment.

32. Mr. Avilla would yell and use racially pejorative language directed at Plaintiff on

a near-daily basis.

33. Defendant's practice of providing commission payments to non-African American employees constitutes blatant favoritism that only served to deepen the injustice and inequality felt by Plaintiff.

34. In or around March 2021, Plaintiff requested and took a leave of absence to mourn the loss of her daughter.

35. Rather than being met with compassion and respect upon her return from mourning her daughter's passing, Plaintiff was retaliated on account of her race for taking leave by Mr. Avilla.

36. After requesting FMLA, Plaintiff was saddled with an excessive workload but denied the ability to work overtime, had her hours changed, and was given assignments outside her job description; meanwhile Plaintiff's co-workers were given more favorable assignments and allowed to work overtime. .

37. Plaintiff worried that if she reported her manager for discrimination or failed to complete her work, Defendant would terminate her employment.

38. In or around that same time, Plaintiff mustered up the courage to request overtime, a raise, and lead position from Mr. Avilla as a result of the excessive responsibility and tasks she was given.

39. Mr. Avilla denied Plaintiff's overtime request, forcing her to complete over double the workload of her Caucasian/non-African American counterparts in the same amount of time.

40. Because Plaintiff was one of only a few African American employees, the treatment she experienced was only exacerbated by this fact, causing her to feel humiliated and

isolated on a daily basis.

41. Around this time, Plaintiff began to experience issues breathing at work as a result of her disability.

42. As such, Plaintiff would engage in protected activity and request periodic breaks to catch her breath; however, Defendant would force Plaintiff to work through her disability-related symptoms, effectively failing to accommodate Plaintiff's disability or engage in an interactive process to determine the appropriate accommodations for Plaintiff.

43. Even more, Plaintiff was coerced by Defendant's supervisors to note her private doctor's appointments on the work calendar, humiliating her and exposing her private information to Defendant's entire staff.

44. For these doctor's appointments she was required to note on the public work calendar, Plaintiff requested FMLA leave and was approved for such leave.

45. Each time Plaintiff would need to take time off to go to doctor's visits or take medical leave, Mr. Avilla would become upset, slam equipment in her presence, and saddle Plaintiff with even more strenuous tasks.

46. On or around July 27, 2021, Plaintiff complained to Defendant's Human Resources representative, Christine Lewis, about Mr. Avilla's discriminatory conduct.

47. Defendant failed or refused to investigate Plaintiff's report or take remedial action to prevent further unlawful conduct against Plaintiff.

48. As a result of Defendant's inaction, Plaintiff filed another complaint with Ms. Lewis on or around August 1, 2021 outlining the company's systematic favorable treatment of non-African American employees, and the treatment she suffered since returning from leave.

49. Plaintiff told Ms. Lewis that Caucasian employees were assisted when they asked for help, that African American employees were not afforded the same opportunities to climb the company ladder, and that Plaintiff was retaliated against upon her return from leave.

50. Again, Defendant failed or refused to take any action following Plaintiff's complaint.

51. On or around September 8, 2021 Plaintiff engaged in protected activity under the ADA and the FMLA and requested FMLA paperwork to apply for and receive leave as a result of her disability (asthma) from Ms. Lewis.

52. Plaintiff explained that her disability has not only been triggered by environmental changes at Defendant's workplace but also as a result of the disparate treatment she was receiving from Mr. Avilla and other non-African American employees; Plaintiff requested that upon her return from medical leave that Ms. Lewis transfer her to a different position away from the loading dock where Mr. Avilla worked.

53. Defendant purported to support Plaintiff's request for FMLA leave; however they gave her a deadline of September 24, 2021 to submit all paperwork but did not provide the paperwork she needed, effectively obstructing Plaintiff from exercising her FMLA rights.

54. Plaintiff was ultimately recommended for medical leave by her physician as a result of her asthma and sarcoidosis, a condition that causes red and inflamed lumps in the lungs.

55. Defendant was fully aware of Plaintiff's condition and received updates from Plaintiff throughout her FMLA leave.

56. In fact, Defendant had knowledge of Plaintiff's disability prior to September 2021 as evidenced by two prior approved FMLA leave(s).

57. On or around October 22, 2021, Plaintiff contacted Ms. Lewis with a doctor's note that recommends that she return to work on November 1, 2021 without restrictions.

58. Ms. Lewis required Plaintiff to submit another doctor's note closer to her return date.

59. Ms. Lewis did not tell Plaintiff whether she would transfer Plaintiff to a different position so that she does not have to work with her harasser (Mr. Avilla) upon her return.

60. Defendant made Plaintiff jump through extra hoops on account of her reports of race-based harassment against favored non-African American employees at Defendant's workplace.

61. Defendant's workplace had become so unbearable that no reasonable person would be able to continue working there.

62. Ultimately, on or about November 1, 2021, Plaintiff was constructively terminated as a result of the severity of the race-based and disability-based treatment and retaliation for engaging in protected activity. .

63. Plaintiff was treated less favorably than other similarly situated individuals outside of her protected classes (non-African American, non-disabled individuals).

64. Plaintiff endured discrimination and engaged in protected activity to oppose unlawful harassment and request FMLA leave for her disability.

65. Plaintiff was ultimately targeted for constructive termination in retaliation for engaging in protected activity. .

66. Plaintiff suffered multiple adverse employment actions including, but not limited to being constructively terminated.

67. There is a basis for employer liability for the race-based and disability-based

disparate treatment that Plaintiff was subjected to.

68. Plaintiff can show that she engaged in statutorily protected activity –a necessary component of her retaliation claims- because Plaintiff lodged complaints directly to Defendant about the harassment and requested FMLA leave and accommodations for her disability.

## COUNT I
### Violation of 42 U.S.C. §1981
### (Race-Based Discrimination)

69. Plaintiff repeats and re-alleges paragraphs 1-68 as if fully stated herein.

70. Section 1977 of the Revised Statutes, 42 U.S.C. §1981, as amended, guarantees persons of all races, colors, and national origin the same right to make and enforce contracts, regardless of race, color, or national origin. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

71. Defendant's conduct against Plaintiff's race amounts to a pattern or practice of systemic race discrimination that constitutes illegal, intentional race discrimination in violation of 42 U.S.C. §1981.

72. Plaintiff was subjected to and harmed by Defendant's systemic and individual discrimination.

73. Defendant's unlawful conduct resulted in considerable harm and adverse employment action to Plaintiff and Plaintiff is therefore entitled to all legal and equitable remedies under §1981.

74. As a direct and proximate result of the race-based discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress,

humiliation, and loss of enjoyment of life.

## COUNT II
### Violation of Title VII of the Civil Rights Act of 1964
### (Race-Based Discrimination)

75. Plaintiff repeats and re-alleges paragraphs 1-68 as if fully stated herein.

76. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

77. Plaintiff is a member of a protected class under Title VII, due to Plaintiff's race.

78. Plaintiff met or exceeded performance expectations.

79. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

80. Defendant constructively terminated Plaintiff's employment on the basis of Plaintiff's race.

81. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

82. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT III
### Violation of Title VII of the Civil Rights Act of 1964
### (Race-Based Harassment)

83. Plaintiff repeats and re-alleges paragraphs 1-68 as if fully stated herein.

84. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices and subjected Plaintiff to race-based harassment, in violation of Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

85. Defendant knew or should have known of the harassment.

86. The race-based harassment was severe or pervasive.

87. The race-based harassment was offensive subjectively and objectively.

88. The race-based harassment was unwelcomed.

89. Plaintiff is a member of a protected class under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* due to Plaintiff's race, African-American.

90. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

91. As a direct and proximate result of the race-based harassment described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT IV
### Violation of Title VII of the Civil Rights Act of 1964
### (Retaliation)

92. Plaintiff repeats and re-alleges paragraphs 1-68 as if fully stated herein.

93. Plaintiff is a member of a protected class under 42 U.S.C. §2000e, *et seq.*

94. During Plaintiff's employment with Defendant, Plaintiff reasonably complained to Defendant about conduct that constituted race discrimination and/or race-based harassment.

95. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.*

96. In response to Plaintiff's complaint, Defendant failed to conduct a prompt, thorough, and objective investigation of Plaintiff's complaint of race discrimination or harassment.

97. Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory and harassing conduct complained of by Plaintiff.

98. Plaintiff suffered adverse employment action in retaliation for engaging in protected activity.

99. By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff's reporting the race-based discrimination or harassment, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq*.

100. Defendant's retaliatory conduct toward Plaintiff illustrated a willful and/or reckless violation of Title VII.

101. As a direct and proximate result of the above-alleged willful and/or reckless acts of Defendant, Plaintiff has suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

## COUNT V
**Violation of the Americans with Disabilities Act
(Disability-Based Discrimination)**

102. Plaintiff repeats and re-alleges paragraphs 1-68 as if fully stated herein.

103. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq*.

104. Plaintiff met or exceeded performance expectations.

105. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

106. Defendant terminated Plaintiff's employment on the basis of Plaintiff's disability.

107. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless violation

of the ADA.

108. Plaintiff is a member of a protected class under the ADA, due to Plaintiff's disability.

109. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

110. As a direct and proximate result of the discrimination described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT VI
### Violation of the Americans with Disabilities Act
### (Failure to Accommodate)

111. Plaintiff repeats and re-alleges paragraphs 1-68 as if fully stated herein.

112. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's disability in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq*.

113. Plaintiff is a qualified individual with a disability.

114. Defendant was aware of the disability and the need for accommodations.

115. Defendant failed to engage in the interactive process to determine the appropriate accommodations after Plaintiff requested reasonable accommodations.

116. Plaintiff's reasonable accommodations that was requested was not an undue burden on Defendant.

117. Defendant did not accommodate Plaintiff's disability.

118. Plaintiff is a member of a protected class under the Americans with Disabilities

Act of 1990, as amended, 42 U.S.C. §12101 *et seq.*, due to Plaintiff's disability.

119. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

120. As a direct and proximate result of the failure to accommodate described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT VII
### Violation of Americans with Disabilities Act
### (Retaliation)

121. Plaintiff repeats and re-alleges paragraphs 1-68 above as if fully stated herein.

122. Plaintiff is a member of a protected class under 42 U.S.C. § 12101, *et seq.*

123. During Plaintiff's employment with Defendant, Plaintiff requested and was approved for accommodations related to her disability.

124. Plaintiff sought to use said accommodations.

125. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*

126. In response to Plaintiff's protected activity, Defendant made it increasingly difficult for Plaintiff to perform her work, request accommodations, and use accommodations.

127. Defendant also failed to take necessary precautions to prevent further recurrences of the discriminatory or harassing conduct complained of by Plaintiff.

128. By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff requesting and utilizing accommodations thereby violating Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*

129. Plaintiff suffered an adverse employment action in retaliation for engaging in

protected activity.

130. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

131. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life

## COUNT VIII
### Violation of the Family Medical Leave Act
### (FMLA Interference - Failure To Provide FMLA Information)

132. Plaintiff repeats and re-alleges paragraphs 1-68 as if fully stated herein.

133. On January 10, 2019, Plaintiff was eligible for FMLA leave.

134. At all times material, Plaintiff gave proper notice to her employer by informing them of the serious medical condition, which required Plaintiff to receive extensive medical care and take leave.

135. Defendant controlled Plaintiff's work schedule and conditions of employment.

136. Plaintiff provided enough information for her employer to know that Plaintiff's leave was covered by the FMLA.

137. Despite their knowledge of Plaintiff's medical condition and life threatening situation, his employer failed to provide Plaintiff with the proper paperwork to qualify her leave as FMLA, effectively threatening her with submission deadlines she could not meet at which point her leave would be deemed unexcused absences.

138. When Plaintiff's employer obstructed Plaintiff's ability to take leave and receive pay while on leave, Defendant interfered with Plaintiff's rights under the FMLA.

139. Despite Plaintiff's FMLA eligibility, Defendant unlawfully denied Plaintiff's full utilization of her FMLA rights.

140. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

141. As a direct and proximate result of the interference described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

## COUNT IX:
### Violation of the Family Medical Leave Act
### (FMLA Retaliation)

142. Plaintiff repeats and re-alleges paragraphs 1-68 as if fully stated herein.

143. Defendant constructively terminated Plaintiff after Plaintiff engaged in protected activity to request/take FMLA leave.

144. Specifically, Plaintiff requested FMLA leave when she explained that she had a condition that was severe or life threatening.

145. Defendant, in response, failed to pay Plaintiff while on leave and made her jump through additional hoops to return to work not required of other similarly situated employees.

146. Defendant has intentionally engaged in unlawful employment practice in violation of the FMLA, by retaliating against Plaintiff for having requested and taking leave for medical reasons.

147. Plaintiff's request for medical leave pursuant to the FMLA was a direct and proximate cause of Plaintiff's constructive termination.

148. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits

and has suffered and continues to suffer mental anguish, distress, humiliation and loss of enjoyment of life.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court find in Plaintiff's favor and against Defendant as follows:

a. Enter an order finding Defendant violated 42 U.S.C. §1982, Title VII of the Civil Rights Act, the ADA, and the FMLA, and award the following:

b. Back pay with interest;

c. Payment of interest on all back pay recoverable;

d. Front pay;

e. Loss of benefits;

f. Compensatory and punitive damages;

g. Reasonable attorneys' fees and costs;

h. Award pre-judgment interest if applicable; and

i. Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues be submitted to and determined by a jury. Dated this 14th day of July, 2023.

/s/ *Mohammed Badwan*
**Mohammed Badwan, ESQ.**
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (630) 568-3056

                                          Fax (630) 575 - 8188
                                          mbadwan@sulaimanlaw.com
                                          *Attorney for Plaintiff*